# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | )   CRIM. ACT. NO. 1:23-cr-167-TFM |
| | ) |
| HUNTER PRATEEP SAMAKOOL | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant's *Motion to Dismiss* (Doc. 30, filed 10/4/23) and *Motion to Dismiss the Indictment with Argument and Authorities* (Doc. 34, filed 10/11/23). The United States filed its consolidated response in opposition (Doc. 47, filed 10/26/23). The Court issued oral rulings on the motion on November 1, 2023 with a note that a written opinion would follow. This is that opinion.

Upon consideration of the motions, response, and relevant law, for the reasons set forth below, the motions are **DENIED**.

### I.   BACKGROUND AND MOTIONS

On October 26, 2022, Defendant Samakool was indicted for the offense of unlawfully transferring a firearm to a prohibited person (Paul Stephen Valdez, Jr.) in violation of 18 U.S.C. § 922(d). The statute prohibits the sale or other disposition of any firearm or ammunition to a prohibited person – in this case a person convicted of a crime punishable by imprisonment for a term exceeding one year. 18 U.S.C. § 922(d)(1). Defendant raises two separate challenges by his motions to dismiss which the Court will address in turn.

The first motion to dismiss (Doc. 30) requests dismissal of the indictment because the United States has not alleged that the commission of the offense was in or affecting interstate commerce. He then breaks this challenge down further into three parts:

> (1) as the weapon was manufactured in Alabama, the firearm was transferred (not sold), and the transfer occurred within the state of Alabama – therefore, it was not "in or affecting" interstate commerce;
>
> (2) if the jurisdictional element requires only prior movement in commerce, then the statute is facially unconstitutional; and
>
> (3) the statute is unconstitutional as applied to the facts of this case.

Doc. 30 at 1.

The second motion to dismiss (Doc. 34) asserts a *Bruen*-style challenge arguing that after *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Court announced a "text-and-history test" for analyzing Second Amendment challenges. Samakool basically does a two-step analysis, but at its core, the challenge is essentially asserting that Paul Stephen Valdez, Jr., as a convicted felon, cannot be prohibited from possessing a firearm and therefore § 922(d) is unconstitutional because the second part is contrary to the *Bruen* analysis. Essentially Samakool takes the recent arguments made in felon-in-possession cases, 18 U.S.C. § 922(g), and extends it to § 922(d) because of the prohibit person portion of the statute (i.e. the transferee).

The United States filed a consolidated response in opposition to the motions to dismiss. *See* Doc. 47. But, the United States still divides its analysis to discuss each motion separately. *Id*. at 4-11 (relating to Doc. 30) and *id*. at 11-18 (relating to Doc. 34). As to the first motion to dismiss, the United States asserts that § 922(d) is a valid commercial regulation because it targets activity that has a substantial impact on interstate commerce, but further notes that unlike some criminal statutes, §922(d) does not require the United States to draw a link to interstate commerce to obtain a conviction. *Id*. at 4. Further, the United States notes Eleventh Circuit case law that

it indicates is controlling. *Id*. at 4-5. As to the first motion to dismiss, the United States says the motion should be denied for three reasons: (1) the motion is premature because it attempts to inject the facts of Samakool attempts to inject the facts of his case into his facial and as-applied arguments; (2) § 922(d) passes constitutional muster as a facial matter; and (3) § 922(d) applies constitutionally to Samakool's case. *Id*. at 5.

As to the second motion to dismiss (Doc. 34), the United States argues § 922(d) complies with the Second Amendment because it does not disarm anyone, but instead merely prohibits the transfer of a firearm to various categories of individuals, including convicted felons. *Id*. at 11. It further avers that § 922(d)(1) does not implicate the Second Amendment's text because the right to keep and bear arms is the substance of the Second Amendment and § 922(d)(1) merely provides that a person cannot sell or otherwise dispose of a firearm to a known convicted felon – in this case it does not disarm the transferor (Samakool). To reach the result asserted by the Defendant, the United States notes that the Court would have to get to the "impact of § 922(d)(1) on the felon" as "a convicted felon has a constitutional right to possess a firearm, and § 922(d)(1) infringes upon that right." *Id*. at 13. The United States asserts the argument suffers from three defendants: (1) standing, (2) failure to show § 922(d)(1) is tantamount to disarmament, and (3) felons are not covered by the protections within the Second Amendment. *Id*. at 13-15. Finally, the United States argues that § 922(d)(1) has ample historical comparators that pass under a *Bruen*-style scrutiny. *Id*. at 16-18.

The Court finds that a hearing is not necessary and the motions to dismiss are ripe for review.

## II.     D<small>ISCUSSION AND</small> A<small>NALYSIS</small>

### A.     Interstate Commerce Challenge (Doc. 30)

To the extent Samakool makes a general facial challenge to the constitutionality of the statute as to "in or affecting commerce", the Court will address it further below. However, to the extent Samakool makes a specific factual challenge as to whether the conduct at issue is sufficient to have a substantial effect on interstate commerce, that issue is not yet ripe. The Court cannot presume that either party's version of the facts will ultimately prove true at trial, nor should it at this stage in the proceedings. Should a question remain as to whether the Government has proved that the alleged activities establish the necessary nexus to commerce, Samakool may again raise this issue at trial. *See United States v. Salman*, 378 F.3d 1266, 1269 (11th Cir. 2004) ("it is not for the courts to filter which criminal cases may reach the trial stage by reviewing the proffered evidence in advance"); *United States v. Pugh*, Crim. Act. No. 1:20-cr-73-TFM, 2021 U.S. Dist. LEXIS 177266, at *11 (S.D. Ala. May 13, 2021); *United States v. Ramos*, Crim. Act. No. 1:02-cr-730-14-AT-AJB, 2016 U.S. Dist. LEXIS 183591, at *20, 2016 WL 8222072, at *7 (N.D. Ga. Dec. 19, 2016), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 16634, 2017 WL 512752 (N.D. Ga. Feb. 6, 2017); *United States v. Alvarado-Linares*, Crim. Act. No. 1:10-cr-086, 2011 U.S. Dist. LEXIS 155112, at *6-8, 2011 WL 7807742, at *2 (N.D. Ga. Nov. 14, 2011), *report and recommendation adopted* 2012 U.S. Dist. LEXIS 64824, 2012 WL 1632048 (N.D. Ga. May 8, 2012).

Turning to the facial challenge, the Court finds that § 922(d) is constitutional. Defense acknowledges that the Eleventh Circuit has previously held that Congress acted within its commerce power in enacting § 922 (d) in prohibiting the knowing sale of a firearm to a convicted felon. *See* Doc. 30 at 2. Specifically, in *United States v. Peters*, the Eleventh Circuit held that

because the sale of firearms is an economic activity that substantially affects interstate commerce, Congress acted within its commerce power in enacting § 922(d). 403 F.3d 1263, 1272 (11th Cir. 2005). The Eleventh Circuit, relying upon *United States v. Lopez*, 514 U.S. 549 (1995), noted that Commerce Clause jurisprudence acknowledges "three broad categories of activity that Congress may regulate under its commerce power. 403 F.3d at 1271 (quoting *Lopez*, 514 U.S. at 558).

> First, Congress is empowered to "regulate the use of the channels of interstate commerce"; second, Congress properly may "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and finally, Congress is authorized "to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect commerce." *Id*. at 558-59; *see also United States v. Ballinger*, 395 F.3d 1218, 1225-26 (11th Cir. 2005) (*en banc*) (discussing these categories). This third Lopez category, we have observed, "is the broadest expression of Congress' commerce power." *Ballinger*, 395 F.3d at 1226.

*Id*. Ultimately, the Eleventh Circuit noted that the sale of firearms to felons directly and substantially affects interstate commerce. *Id*. It further

> identified four basic considerations that guide this inquiry. These are (1) whether the regulated activity is commercial or economic in nature; (2) whether the statute contains an express jurisdictional requirement, capable of limiting its reach to a discrete set of cases; (3) whether the statute or its legislative history contains congressional findings articulating the effect of the regulated activity on interstate commerce; and (4) whether the activity's effect on commerce is direct, as opposed to attenuated.

*Id*. at 1272 (citations omitted). It further discussed that "the Supreme Court has 'upheld a wide variety of congressional Acts regulating intrastate economic activity,' based on its conclusion 'that the activity substantially affected interstate commerce.'" *Id*. at 1273 (quoting *Lopez*, 514 U.S. at 559). "Where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained." *Lopez*, 514 U.S. at 560. Therefore, based on this analysis, the Eleventh Circuit held that "the sale of firearms to felons is an economic activity that substantially affects interstate commerce" and "Congress acted within its commerce power in enacting §

922(d)." *Peters*, 403 F.3d at 1274.

Samakool attempts to distinguish his situation from the *Peters* case by arguing that he did not sell the firearm, but rather merely transferred it to Valdez. However, as noted in the "as applied" section above, the Court notes that it is premature for the Court to resolve factual matters. Moreover, the Court finds as a legal determination that a sale, barter, or alternative payment of a debt are distinctions without a difference. Both are an exchange of goods for value and therefore is a commercial transaction. Put differently, an exchange for currency, goods, services, or settling a debt are all commercial and economic in nature. Therefore, the Court rejects the facial challenge to the extent it argues that § 922(d) is unconstitutional and the Court is bound by binding precedent on that matter. To the extent the challenge implicates the facts of the case, it again, is premature.

Ultimately, the Court agrees with the United States in its response in opposition that the challenge as a pretrial motion fails as a matter of law as to the facial challenges he brings. However, Samakool is free to raise his challenge as to the factual application of the statute to his case once the evidence has been presented by the Government.

**B.    *Bruen* Challenge (Doc. 34)**

In Samakool's second motion to dismiss, he argues that Valdez cannot be a prohibited person under § 922(d) by raising a § 922(g)-type challenge relying primarily upon the decisions in *New York State Rifle & Pistol Ass'n v. Bruen*, –– U.S. ––, 142 S. Ct. 2111, 213 L.Ed.2d 387 (2022).

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In 2008, the Supreme Court issued an opinion in which it held that the Second Amendment protects an individual's right to keep and bear arms for the purpose of self-defense.

*District of Columbia v. Heller*, 554 U.S. 570 (2008). In 2010, the Supreme Court then held that the Fourteenth Amendment's due process clause incorporates the Second Amendment right recognized in *Heller*, making it enforceable against the states. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

After *Heller* and *McDonald*, many circuits (including the Eleventh Circuit) employed a two-step framework: "first, we ask if the restricted activity is protected by the Second Amendment in the first place; and then, if necessary, we . . . apply the appropriate level of scrutiny." *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017) (citation omitted).

*Bruen* upended the second part of that framework by finding it was "one step too many." 142 S. Ct. at 2127. The Court held:

> Step one of the predominant framework is broadly consistent with Heller, which demands a test rooted in the Second Amendment's text, as informed by history. But Heller and McDonald do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

*Id*. Thus, when analyzing Second Amendment challenges to firearm regulations, courts must first determine whether "the Second Amendment's plain text covers an individual's conduct[.]" *Id*. at 2129-30. If so, "the Constitution presumptively protects that conduct[,]" and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*.

Samakool argues that 18 U.S.C. § 922(g)(1) is unconstitutional because the statute violates the Second Amendment to the United States' Constitution. Therefore, if § 922(g)(1) is unconstitutional, then Valdez could not be prohibited from possessing a firearm as a felon which means that he cannot be a prohibited person under § 922(d). A Defendant does not have standing to challenge a violation of constitutional rights on behalf of another. However, the Court will

assume that for the purposes of this analysis, Samakool is not asserting third-party rights, but rather his own because "prohibited person" is an element which the Government must prove.

In *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), the Eleventh Circuit rejected a Second Amendment challenge to 18 U.S.C. § 922(g)(1). An Eleventh Circuit holding is binding "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by [the Eleventh Circuit] sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). To overrule Eleventh Circuit precedent, a Supreme Court ruling must be "clearly on point." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003). Importantly, the Supreme Court did not overrule *Heller* or *McDonald*. *Bruen*, 142 S. Ct. at 2129-30. Rather, the Supreme Court stated that the lower courts had misinterpreted both cases when they applied means-end scrutiny in a Second Amendment context and instead only clarified the standard as opposed to creating a new one. *Id*.

The Eleventh Circuit issued *Rozier* after the issuance of *Heller*. Further, in *Heller*, the Supreme Court, while it did not consider § 922(g)(1), did state:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on *longstanding prohibitions* on the *possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 554 U.S. at 626-27 (emphasis added). The Supreme Court stated that these regulatory measures were "presumptively lawful." *Id*. at 627 n. 26. In *Rozier*, the Court held "statutory restrictions of firearm possession, such as § 922(g)(1), are a constitutional avenue to restrict the Second Amendment right of certain classes of people. Rozier, by virtue of his felony conviction, falls within such a class." *Rozier*, 598 F.3d at 771; *cf. United States v. White*, 593 F.3d 1199, 1205 (11th Cir. 2010) (recognizing § 922(g)(1) as "presumptively lawful"). Further, in *Rozier*,

the Eleventh Circuit did not discuss the second "means end scrutiny" step overturned by *Bruen*. Moreover, by reaffirming and adhering to its reasoning in *Heller* and *McDonald* the Supreme Court in *Bruen*, did not change the regulatory framework that prohibits felons from possessing firearms. Throughout the *Bruen* decision, the Supreme Court repeatedly references "law-abiding" citizens. *See, e.g., Bruen*, 142 S. Ct. at 2131 ("The Second Amendment . . . 'surely elevates above all other interests the right of *law-abiding, responsible citizens* to use arms' for self-defense.") (emphasis added) (quoting *Heller*, 554 U.S. at 635); *id*. at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, *law-abiding, adult citizens*—are part of 'the people' whom the Second Amendment protects.") (emphasis added); *id*. at 2156 ("New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms.") (emphasis added).

Consequently, *Rozier* is still good law, this court must apply it, and § 922(g)(1) is constitutional. Therefore, to the extent Samakool attempts to invalidate the "prohibit person" portion of § 922(d) arguing that Valdez' felon status is constitutional, that argument fails.

### III. CONCLUSION

For the reasons discussed here, the *Motion to Dismiss* (Doc. 30) and *Motion to Dismiss the Indictment with Argument and Authorities* (Doc. 34) are **DENIED**. Nothing in this opinion precludes the raising of an as-applied argument after the facts have been developed at trial.

**DONE** and **ORDERED** this 5th day of November 2023.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE